IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **GE OIL & GAS PRESSURE CONTROL LP (FORMERLY KNOWN AS WOOD GROUP PRESSURE CONTROL, LP)** § § § § | |
| Plaintiff, § | |
| § | Case No. _____ |
| vs. § | |
| § | |
| **ACE AMERICAN INSURANCE COMPANY** § § | |
| § | |
| Defendant. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

GE Oil & Gas Pressure Control LP (formerly known as Wood Group Pressure Control, LP) ("GEOG") files this Original Complaint against ACE American Insurance Company ("ACE") and in support thereof would show the following:

### I.   PARTIES

1.   Plaintiff GEOG is a Texas limited partnership, with its principal place of business in Houston, TX.  The members of GEOG are citizens of the following states (*e.g.*, maintain their principle places of businesses in these states or are incorporated in these states): Connecticut, Delaware, Oklahoma, Massachusetts, New York and Texas.  No member of GEOG is a citizen of Pennsylvania.

2.   Defendant ACE is a Pennsylvania corporation with its principal place of business in Pennsylvania. ACE may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

## II. JURISDICTION AND VENUE

3. This Court's subject matter jurisdiction is predicated on 28 U.S.C. § 1332 and 28 U.S.C. § 2201. The parties are completely diverse, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in the Southern District of Texas, Galveston Division under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims at issue occurred in this District; GEOG resides in and maintains an office in this District; and ACE does business and may be found in this District.

## III. OVERVIEW

5. This insurance recovery dispute arises out of ACE's refusal to reimburse GEOG for the settlement it paid to Petrohawk Energy Corporation ("Petrohawk") as consideration for resolving *Petrohawk, et. al. v. Wood Group Pressure Control, LP*, No. 2012-06644, in the 61st Judicial District of Harris County, Texas (the "Underlying Lawsuit").

6. The Underlying Lawsuit resulted from the failure of a 7 5/8-inch SH2 Casing Hanger (the "Casing Hanger" or "Hanger") that Wood Group Pressure Control, L.P. ("WGPC") sold to Petrohawk in November 2010 pursuant to a 2009 Master Services Contract (the "MSC"). The Casing Hanger was intended for Petrohawk's Frierson 31H-1 well located in Caddo Parish, Louisiana.

7. Approximately two months *after* the Casing Hanger failed, GE Energy Manufacturing, Inc. purchased 100% of the stock of WGPC from John Wood Group, PLC ("Wood Group"). WGPC changed its name to GEOG on May 3, 2011. Because the Petrohawk incident occurred when WGPC was still a subsidiary company of Wood Group, and during the policy period of the ACE coverage, GEOG qualifies as an insured under Wood Group's ACE insurance policies.

### IV.    FACTUAL ALLEGATIONS

*WGPC sells Petrohawk the Casing Hanger for Use in the Frierson 31-1 Well.*

8.     On or around November 2010, WGPC sold a 7 5/8 inch SH2 Casing Hanger to Petrohawk for use in Petrohawk's Frierson 31H-1 well.  A casing hanger is the portion of a wellhead that supports the casing string.  The casing string is an assembled length of steel pipe configured to fit within the hole drilled for the well.  The casing string, supported by the casing hanger, is connected and lowered into the wellbore before being cemented in place.  The casing hanger provides a means of ensuring that the string is correctly located; it generally incorporates a sealing device or system to isolate the casing between the wellbore and tubing from upper wellhead components.  A representative casing hanger is pictured below, followed by a picture of a wellbore demonstrating the location of the casing hanger.





***The Casing Hanger Fails on February 1, 2011, Setting in Motion Extensive Restoration Efforts.***

9. After purchasing the Casing Hanger from WGPC, Petrohawk installed it in the normal course of drilling the Frierson 31H-1 well. While fracking the well on February 1, 2011, the Casing Hanger failed, causing a loss of well control and eventually the loss of the wellbore itself.

10. More specifically, according to Petrohawk, during the ninth stage of fracking, Petrohawk observed an abrupt loss of pressure in the well. A noise and temperature log confirmed the underground flow of gas and formation fluids below the bottom of the surface casing, and 1600 psi of pressure was measured on the well's surface and production casing. This caused a loss of casing integrity in the lateral of the well and resulted in a loss of well control (essentially an underground blow-out).

11. Once the failure was suspected, Petrohawk ran a camera downhole to locate the point of failure. It then attempted to fish out the casing string. As Petrohawk pulled the casing string, the

- 4 -

Hanger, which was too damaged to be retrieved, failed catastrophically, with the top coming off and the remainder left tied into the casing downhole.

12. An extensive wellbore restoration operation ensued. Petrohawk engaged the well support company Boots & Coots, and the companies worked to restore the casing integrity and bring the well under control. These operations were abandoned once it became obvious that a loss of casing integrity had occurred at a depth just short of 14,000 feet. Ultimately Petrohawk determined that the damage to the wellbore was too great and it was forced to re-drill the well.

13. Petrohawk's investigation revealed that the Casing Hanger exhibited total mechanical failure along a tangential (*i.e.*, hoopwise) crack that extended 360º around the axis of the Hanger's inner and outer diameters in a rough plane below the Hanger's load shoulder (*i.e.*, not at a joint). The cracking appeared to be caused by, or at least related to, steel embrittlement.

14. Petrohawk incurred $14.7 million in expenses in attempting to repair and restore the well, including repairing the production casing, cleaning the debris that flowed into the wellbore, and bringing the well under control. Despite 41 days of assistance from Boots & Coots, the wellbore could not be salvaged and Petrohawk expended an additional $6.2 million to re-drill the well.

*GE Purchases WGCP stock, and WGPC Changes its name to GEOG.*

15. In April 2011, approximately two months after the Casing Hanger failed, GE Energy Manufacturing, Inc. ("GE") purchased 100% of the stock of WGPC from Wood Group. WGPC changed its name to GEOG on May 3, 2011.

*Petrohawk Gives Notice of the Claim Around May 11, 2011.*

16. A mere month after the stock transaction, Petrohawk notified GEOG of the Casing Hanger failure and its resulting claims. In a May 11, 2011 demand letter, Petrohawk described the failure and explained that the incident "is the result of a failed casing hanger purchased from John Wood Group."

*GEOG Investigates Petrohawk's Claims.*

17. After learning of Petrohawk's claims, GEOG retained defense counsel—Yetter Coleman LLP, a premier litigation boutique located in Houston—to conduct a comprehensive analysis of GEOG's exposure and defend GEOG in the litigation. As part of its investigation, Yetter Coleman conducted extensive interviews with GEOG's internal engineers and potential witnesses. GEOG also retained a consulting expert, a mechanical engineer, who evaluated the Hanger.

18. In assessing its exposure, GEOG also had the benefit of Petrohawk's expert analysis. Petrohawk retained a third-party, Howard & Associates International Inc. ("HAI"), to conduct an investigation into the Casing Hanger's failure. HAI is a professional engineering firm from Louisiana, who specializes in providing metallurgical and engineering services to oil companies, and has been doing so for over eighteen years.

19. Petrohawk shared with GEOG HAI's detailed report, which identifies temper embrittlement as the primary cause of the failure. Possible causes of the embrittlement identified by HAI included the use of a different alloy, as well as improper heat treatment of the Casing Hanger at WGPC's direction. While HAI's results were not conclusive, GEOG anticipated retaining a variety of experts to address the complex engineering issues presented by the failure, and who would be needed to refute Petrohawk's theory that the Casing Hanger's failure should be attributed to WGPC's design—all at a significant cost.

*ACE is Notified of Petrohawk's Claim in December 2011.*

20. ACE was notified of Petrohawk's $23 million demand (and was provided corresponding documentation) on or about December 9, 2011. GEOG did not receive a request from ACE for information nor any response to the notice of claim.

21. On or about January 3, 2012, ACE received notice that GEOG was nearing a settlement of the Petrohawk claim. GEOG conveyed the proposed terms of the settlement and its intent to recover the value under the Wood Group insurance policies applicable to the Petrohawk claim. GEOG did not receive any response from ACE to this notice.

22. On February 1, 2012, Petrohawk brought the Underlying Lawsuit in Harris County state court against WGPC seeking damages for: (1) negligence, and (2) breach of warranty, including "other damages and interest." Given the MSC's binding arbitration clause, GEOG understood that the claim was more likely to be resolved via AAA binding arbitration (with the parties splitting the cost of a three-arbiter panel), and certainly that additional facts and allegations would be asserted if the case did not settle. Timely notice of the lawsuit was provided to ACE, but ACE failed to provide GEOG with a defense to Petrohawk's claims.

23. On or about March 7, 2012, ACE was again given notice about a potential settlement opportunity with Petrohawk. GEOG did not receive any input from ACE on the settlement negotiations, but instead was informed that an insurance adjuster would be reaching out to GEOG to obtain more details about the incident. GEOG offered for ACE's adjuster to speak to GEOG's Chief Engineer.

24. On or around May 7, 2012, GEOG's Chief Engineer was interviewed about the incident by an adjuster with ACE's Risk Enterprise Management. Despite this interview, and having been provided substantial documentation about Petrohawk's claims and information about ongoing settlement discussions, ACE still had not assumed the defense of Petrohawk's claims nor responded to GEOG about those discussions. In correspondence around that date, GEOG emphasized:

> [S]ince being advised of the potential for a settlement of this matter with Petrohawk, neither ACE nor Wood Group have

> indicated any interest or intention of assuming the defense of this matter or voluntarily participating in a Petrohawk settlement. GE has therefore worked towards reaching a reasonable settlement with Petrohawk on its own. Given the lengthy silence of ACE and Wood Group on this issue, we do not believe there would be any basis to deny coverage or indemnity on the grounds that ACE or Wood Group did not consent to any settlement. Nonetheless, for your information, attached is a draft of the most recent proposed settlement with Petrohawk, which is consistent with the terms outlined to you in our January 3, 2012 letter.

25. In mid-August 2012, still having received no response from ACE, GEOG once again advised that: "As to the Petrohawk matter, we are very close to finalizing the settlement."

26. On August 20, 2012—eight months after GEOG's initial notice—ACE finally conceded that it owed GEOG a defense in the Underlying Lawsuit pursuant to the Policies.

27. Nonetheless, on September 28, 2012, ACE advised GEOG that it had denied GEOG's request for coverage. However, on November 6, 2012, GEOG was informed that ACE understood that there was coverage for the claims asserted in the Underlying Lawsuit, and that GEOG could avail itself of the coverage provided by the Policies.

28. In a November 13, 2012 letter, ACE further clarified that: "the accident took place when WGPC was still a subsidiary company of John Wood Group, PLC, and during the policy period of the ACE coverage, *__therefore WGPC qualifies as an insured under the policy__*." (emphasis supplied). ACE also indicated it would work closely with Wood Group and GEOG to evaluate and reach an equitable disposition. ACE has not abided by its representation.

### *GEOG Secures a Favorable Settlement of Petrohawk's Claims.*

29. Throughout the time period that ACE was receiving information about the Underlying Lawsuit and requests for assistance, GEOG continued to investigate the Underlying Lawsuit, intending to vigorously defend against the claims Petrohawk asserted. But based on its assessment of exposure should the dispute proceed to a final hearing—and the legal, expert, and

arbitration fees that would be required—GEOG determined that the best course would be to resolve the claims prior to engaging in costly and protracted litigation. Through a series of negotiations, GEOG convinced Petrohawk to lower its $23 million demand. GEOG ultimately negotiated a favorable resolution that included commercial concessions. But for the amount paid via the commercial concession, the settlement would have been significantly higher.

30. Sixteen months after GEOG was first notified of the claim, Petrohawk and GEOG executed the Settlement Agreement resolving the claims alleged in the Underlying Lawsuit (the "Settlement").

31. Based upon ACE's unjustified nine-month delay in responding to GEOG's notice of the Underlying Lawsuit and request for a defense, which constitutes a wrongful denial of coverage, and also ACE's failure to timely respond to GEOG's requests regarding its proposed settlement with Petrohawk, ACE waived or is estopped from contesting the reasonableness of GEOG's settlement of the Underlying Lawsuit.

## V. THE INSURANCE POLICIES AT ISSUE

32. GEOG is an insured under ACE General Commercial Liability Policy No. HDOG25521936 ("Primary CGL Policy"), issued to John Wood Group PLC for the policy period January 31, 2011 through January 31, 2012. The Primary CGL Policy provides $2 million in products-completed operations coverage for each occurrence, with a general aggregate limit of $5 million, less any applicable deductible.

33. GEOG is also an insured under ACE Umbrella Liability Policy No. XOOG24876238 (the "Umbrella Policy"), issued to John Wood Group PLC for the policy period January 31, 2011 through January 31, 2012 (collectively "the Policies"). The Umbrella Policy provides an additional $15 million in products-completed operations coverage for each occurrence.

34. The Policies, pursuant to their terms, provide GEOG with insurance coverage for claims against GEOG for property damage taking place during their respective policy periods. The damage suffered by Petrohawk to its well and other property as a result of the defective Casing Hanger constitutes property damage during the 2011-2012 policy period as a result of an occurrence. As such, the reasonable settlement of GEOG's liability to Petrohawk for Petrohawk's property damage is covered under the Policies.

35. Nonetheless, despite numerous demands, ACE has refused to accept its responsibility under the Policies for GEOG's settlement payment.

36. All conditions and requirements imposed by the Policies have been satisfied and/or have been waived and/or are subject to an estoppel or other avoidance against ACE.

## VI.   CAUSES OF ACTION
### COUNT I - BREACH OF CONTRACT

37. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

38. Insurance policies are generally recognized to be contracts between the insurer and the policyholder. Under the terms of the Policies at issue, ACE contracted to pay those sums which GEOG became legally obligated to pay as damages, including all reasonable costs, charges, fees, and expenses incurred in defending or investigating claims.

39. ACE was timely notified of Petrohawk's damage claim and the Underlying Lawsuit, and request was made to defend GEOG in the Underlying Lawsuit. ACE was also advised of settlement discussions between GEOG and Petrohawk and asked to participate in those discussions.

40. ACE failed to substantively respond to GEOG's communications leaving GEOG with only the uncertainty of insurance coverage and the obligation to develop the Underlying Lawsuit.

As a result, GEOG entered into a reasonable settlement with Petrohawk resolving GEOG's likely liability for property damage suffered by Petrohawk due to the failed Casing Hanger.

41. ACE failed to defend or indemnify GEOG for the claims asserted in the Underlying Lawsuit, leaving GEOG to fund the defense and settlement of the Underlying Lawsuit on its own. By wrongfully failing to reimburse GEOG for those payments, ACE violated its contractual obligations to GEOG.

42. GEOG has suffered actual damages in the form of the unreimbursed settlement payment to Petrohawk in the Underlying Lawsuit, as well as the attorneys' fees and expenses necessarily incurred by GEOG in advancing its defense in that lawsuit.

## COUNT II – VIOLATIONS OF CHAPTER 541, TEXAS INSURANCE CODE

43. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

44. ACE has violated Section 541.060 of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of GEOG's claim when ACE's liability for GEOG's settlement became reasonably clear.

45. This violation caused GEOG to suffer actual damages.

46. Further, ACE knowingly committed this violation of Chapter 541, entitling GEOG to an award of multiples damages under Texas Insurance Code Section 541.152.

## COUNT III -- ATTORNEYS' FEES

47. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

48. GEOG was forced to retain the undersigned attorneys to pursue this action. Therefore, pursuant to Texas Civil Practice and Remedies Code Section 38.001 and Texas Insurance Code Section 541.152, all of GEOG's reasonable and necessary attorneys' fees may be recovered-

through trial, appeal, and Supreme Court review. All conditions precedent to recovery of GEOG's attorney's fees have been satisfied.

## PRAYER

THEREFORE, GEOG requests that:

1. ACE answer these claims;

2. Judgment be entered against ACE for:

   a. All actual, general, economic, special, consequential, direct and indirect damages suffered by GEOG;

   b. Multiple damages if ACE knowingly committed unlawful acts and practices under the Texas Insurance Code;

   c. Prejudgment and post-judgment interest at the maximum allowable rate;

   d. Reasonable and necessary attorney's fees and expenses incurred in this litigation;

   e. All costs in prosecuting this litigation; and

   f. Any additional relief, legal and equitable, general or special, to which GEOG may be justly or equitable entitled.

Respectfully submitted,

*/s/ Julie Hardin*
Julie Hardin
*(Attorney-in-Charge)*
State Bar No. 24013613
Federal Bar No. 26459
J. James Cooper
State Bar. No. 04780010
Federal Bar No. 2881
REED SMITH LLP
811 Main, Suite 1700
Houston, Texas 77002
Telephone: (713) 469-3800
Facsimile: (713) 469-3899
jhardin@reedsmith.com
jcooper@reedsmith.com

***COUNSEL FOR PLAINTIFF GE OIL & GAS PRESSURE CONTROL LP***